BENJAMIN B. WAGNER
United States Attorney
MICHAEL BECKWITH
TODD A. PICKLES
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED

DEC 17 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

2:15 - CR - 0 2 3 5 TLN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DUMITRU MARTIN, ANAMARIA CRUCERU, CONSTANTIN SCHILLER, and MARCELLE BANAGA, <br><br> Defendants. | CASE NO. <br><br> 18 U.S.C. § 371 – Conspiracy to Commit Bribery; <br> 18 U.S.C. § 201 – Bribery of Public Official; <br> 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

# I N D I C T M E N T

COUNT ONE: [18 U.S.C. § 371 – Conspiracy to Commit Bribery]

The Grand Jury charges:

DUMITRU MARTIN,
ANAMARIA CRUCERU,
CONSTANTIN SCHILLER, and
MARCELLE BANAGA,

Defendants herein, as follows:

I.   PARTIES AND RELEVANT ENTITIES

At all relevant times,

INDICTMENT

1

1. The United States Air Force ("USAF") maintained air bases throughout the United States, including at Travis Air Force Base in Fairfield, California, and in foreign countries, including at Mihail Koglaniceanu Air Base in Romania.

2. The USAF contracted with private companies to provide certain services and products for the air bases. As part of the process of contracting with private companies, the USAF solicited bids from contractors which asked a contractor to identify the amount of money that the contractor would charge the USAF to provide the services and products needed, along with other information.

3. The USAF then awarded a contract based upon, among others considerations, which contractor submitted the lowest bid. Certain individuals within the USAF had authority to award contracts on behalf of the USAF.

4. DUMITRU MARTIN was a citizen of Romania who owned and operated Polaris M Holdings ("Polaris"), which is based in Romania. Polaris provided sanitation services to various entities doing business in Romania and offered to provide storage containers to the USAF at Mihail Koglaniceanu Air Base in Romania.

5. ANAMARIA CRUCERU was a citizen of Romania who was an employee of Polaris.

6. CONSTANTIN SCHILLER was a citizen of Romania who was an employee of Polaris.

7. MARCELLE BANAGA was a citizen of Romania who was an employee of Polaris.

## II.   THE CONSPIRACY

8. Defendants herein, between in or about October 2014, and continuing through in or about December 2015, in the Counties of Solano and Sacramento, State and Eastern District of California, and elsewhere, did knowingly and intentionally conspire with each other to commit bribery in violation of Title 18, United States Code, Section 201.

## III.   OBJECT OF THE CONSPIRACY

9. The object of the conspiracy was for Polaris to be awarded contracts with the USAF in exchange for money provided to an employee of the USAF.

///

///

IV. MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was carried out, in substance, as follows:

10. Beginning in or about October 2014 and continuing through at least October 2015, defendants MARTIN, CRUCERU, SCHILLER, and BANAGA made efforts for Polaris to obtain contracts with the USAF to provide storage containers and other products and services to the USAF in Romania, including by offering and providing money to a USAF official at Travis Air Base who had authority to award contracts on behalf of the USAF ("USAF Military Contracting Officer"). The USAF Military Contracting Officer was an actual officer and employee of the USAF, and therefore a public official. At all relevant time, the USAF Military Contracting Officer was working with federal law enforcement on the investigation that led to this Indictment.

11. MARTIN, CRUCERU, SCHILLER, and BANAGA offered that Polaris would pay money to the USAF Military Contracting Officer in order for Polaris to be awarded contracts by the USAF. MARTIN, CRUCERU, SCHILLER, and BANAGA called the bribe payment a "commission." The defendants agreed that the money would be paid to the USAF Military Contracting Officer and would amount to approximately 10% of the total amount of the sales contracts to be awarded to Polaris.

12. MARTIN, CRUCERU, and SCHILLER discussed with the USAF Military Contracting Officer and others that Polaris would submit bids to the USAF at Travis Air Force Base after the defendants had received information from the USAF Military Contracting Officer about legitimate bids submitted by Polaris's competitors. Polaris would then submit a bid that was slightly lower than the lowest legitimate bid submitted by a competitor.

13. In order to disguise and conceal the bribe payment to the USAF Military Contracting Officer, MARTIN, CRUCERU, SCHILLER, and BANAGA offered to use a consulting contract and invoices between Polaris and a fictional company that would be associated with the USAF Military Contracting Officer or another individual working with the USAF Military Contracting Officer. In truth and in fact, neither the USAF Military Contracting Officer nor anyone working with the USAF Military Contracting Officer, provided any consulting services to Polaris. The consulting contract was to be used to conceal the payment of money to the USAF Military Contracting Officer in exchange for the USAF Military Contracting Officer awarding the contract to Polaris.

14. BANAGA also offered to pay the "commission" in installments over the course of five years, and to have another contract signed between Polaris and a fictional company that would be associated with the USAF Military Contracting Officer or another individual working with the USAF Military Contracting Officer. The contract would indicate that the company associated with the USAF Military Contracting Officer would provide maintenance and repair services to Polaris over a five-year period. In truth and in fact, neither the USAF Military Contracting Officer nor anyone working with the USAF Military Contracting Officer had a company that would provide such services to Polaris. Rather, the company was to be used to conceal the installment bribe payments from Polaris to the USAF Military Contracting Officer in exchange for the USAF Military Contracting Officer awarding the contract to Polaris.

15. In or around February 2015, Polaris submitted to the USAF a bid for a multi-million dollar contract to provide storage containers to U.S. forces stationed at Mihail Kogalniceanu Air Base in Romania. The bid submitted to the USAF by Polaris was just lower than the lowest bid by a competitor and was submitted after CRUCERU received information representing to be the lowest bid from a competitor. Due to matters in Romania, Polaris was unable to execute this contract and no "commission" was paid to the USAF Military Contracting Officer.

16. In or around July 2015, Polaris submitted to the USAF a bid for a different contract to provide storage containers to Mihail Kogalniceanu Air Base in Romania. Polaris then submitted to the USAF a revised bid signed by MARTIN. The revised bid amount was higher than Polaris's original bid, but just below the next lowest bid and was submitted after CRUCERU received information that was represented to be the lowest bid from a competitor.

17. In or around September 2015, MARTIN traveled to Travis Air Force Base and signed what was represented to be the official military contract for Polaris to provide storage containers to Mihail Kogalniceanu Air Base in Romania. MARTIN also signed the false consulting contract and the false maintenance contract between Polaris and companies purportedly associated with the USAF Military Contracting Officer. As noted, these contracts were intended to facilitate and conceal the payment of money from Polaris to the USAF Military Contracting Officer in exchange for the USAF Military Contracting Officer awarding the contract to Polaris.

18.     Thereafter, in or around September 2015, MARTIN and CRUCERU caused a wire transfer in the amount of $100,000 to be sent from Polaris's bank account in Romania to a bank account in the United States, which was represented to be the bank account associated with the USAF Military Contracting Officer.

## V.     OVERT ACTS IN FUTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to accomplish its objects, defendants DUMITRU MARTIN, ANAMARIA CRUCERU, CONSTANTIN SCHILLER, and MARCELLE BANAGA, and others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the State and Eastern District of California and elsewhere:

19.     On or about October 27, 2014, CRUCERU and SCHILLER met with individuals purporting to work with the USAF Military Contracting Officer and offered to pay the USAF Military Contracting Officer a "commission" equal to a portion of the contract in return for a guarantee that the USAF Military Contracting Officer would award the contract to Polaris.

20.     On or about October 27, 2014, MARTIN traveled to Sacramento, California for the purpose of meeting the USAF Military Contracting Officer.

21.     On or about October 29, 2014, MARTIN and SCHILLER met with individuals purporting to work with the USAF Military Contracting Officer and offered to pay the USAF Military Contracting Officer a "commission" in order to be awarded a contract to Polaris.

22.     On or about January 28, 2015, MARTIN met with an individual purporting to work with the USAF Military Contracting Officer and offered to pay the USAF Military Contracting Officer a "commission" in order to be awarded a contract to Polaris. MARTIN suggested that consulting invoices be used to conceal the payment of money to the USAF Military Contracting Officer.

23.     On or about February 20, 2015, Polaris representatives provided a bid to provide storage containers to U.S. forces stationed at Mihail Kogalniceanu Air Base in Romania.

24.     On or about May 25, 2015, CRUCERU, SCHILLER, and BANAGA met with an individual purporting to work with the USAF Military Contracting Officer and offered to pay the USAF Military Contracting Officer a "commission" in order to be awarded a contract to Polaris and suggested that a consulting contract and maintenance contract be used to conceal the installment payments of

1 | money to the USAF Military Contracting Officer.

2 |     25.    On or about July 7, 2015, Polaris representatives submitted a revised bid to provide storage containers to Mihail Kogalniceanu Air Base in Romania.

    26.    On or about September 10, 2015, MARTIN traveled to Sacramento, California for the purpose of meeting with the USAF Military Contracting Officer.

    27.    On or about September 11, 2015, MARTIN met with the USAF Military Contracting Officer and another individual purporting to work with the USAF Military Contracting Officer at Travis Air Base.

    28.    On or about September 11, 2015, MARTIN signed what purported to be a military contract to have Polaris provide storage containers to Mihail Kogalniceanu Air Base in Romania.

    29.    On or about September 11, 2015, MARTIN signed a consulting agreement with the USAF Military Contracting Officer.

    30.    On or about September 11, 2015, MARTIN signed a 5-year maintenance agreement with the USAF Military Contracting Officer.

    31.    On or about September 29, 2015, MARTIN and CRUCERU caused a wire transfer in the amount of $100,000 to be sent from Polaris's bank account in Romania to a bank account in the United States represented to be a bank account associated with the USAF Military Contracting Officer.

    In violation of Title 18, United States Code Section 371.

COUNT TWO: [18 U.S.C. § 201 – Bribery of Public Official]

    The Grand Jury further charges: T H A T

> DUMITRU MARTIN,
> ANAMARIA CRUCERU,
> CONSTANTIN SCHILLER, and
> MARCELLE BANAGA,

between in or about October 2014 and in or about December 2015, in the State and Eastern District of California, and elsewhere, the defendants did, directly and indirectly, corruptly give, offer, and promise a thing of value, that is, a monetary payment, to a public official with the intent to influence an official act, that is, the awarding of a United States Air Force contract to Polaris M Holdings Company, in

1 | violation of Title 18, United States Code, Sections 2 and 201(b)(1).

FORFEITURE ALLEGATION:        [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One and Two of the Indictment, defendants DUMITRU MARTIN, ANAMARIA CRUCERU, CONSTANTIN SCHILLER, and MARCELLE BANAGA, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to a sum of money equal to the total amount of money involved in the offenses, for which the defendants are convicted.

2. If any property subject to forfeiture, as a result of the offenses alleged in Counts One and Two, for which the defendants are convicted:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ **Signature on file w/AUSA**

FOREPERSON

BENJAMIN B. WAGNER
United States Attorney

INDICTMENT            7

No. _____                                                    2:15 - CR - 0 2 3 5 TLN

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA

vs.

DUMITRU MARTIN

## I N D I C T M E N T

**VIOLATION(S):**
18 U.S.C. § 371 – Conspiracy to Commit Bribery;
18 U.S.C. § 201 – Bribery of Public Official;
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

*A true bill,*

**/s/ Signature on file w/AUSA**
_____
*Foreman.*

Filed in open court this ____17____ day of ___DECEMBER___, A.D. 20 15

_____
*Clerk*

Bail, $ _____

**NO PROCESS NECESSARY**
as to D. Martin

**NO BAIL WARRANT PENDING HEARING**
as to Crucera
Schuller
Bangs
an C.

GPO 863 525

Honorable Allison Claire
U.S. Magistrate Judge

2:15 - CR - 0 2 3 5 TLN

## United States v. Dumitru Martin, et al.
### Penalties for Indictment

**Defendants**

DUMITRU MARTIN,
ANAMARIA CRUCERU,
CONSTANTIN SCHILLER, and
MARCELLE BANAGA

**COUNT 1:**       ALL DEFENDANTS

VIOLATION:       18 U.S.C. § 371 – Conspiracy to Commit Bribery

PENALTIES:       Maximum of 5 years imprisonment, or
A fine of $250,000 or twice the gross loss or gross gain
Supervised release of up to three years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 2:**       ALL DEFENDANTS

VIOLATION:       18 U.S.C. § 201 – Bribery of a Public Official

PENALTIES:       Maximum of 15 years imprisonment; or
Fine of $250,000 or up to three times the monetary equivalent of the thing of value, whichever is greater
Supervised release of at up to 5 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:** ALL DEFENDANTS

VIOLATION:       18 U.S.C. §§ 982(a)(2)(B) and 1028(b)(5)

PENALTIES:       As stated in the charging document